USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: _3/11/2025_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

KAITLIN LALLY,

                          Plaintiff,

        -against-

KLICK USA, INC. d/b/a KLICK HEALTH,
ARI SCHAEFER, ALEXANDER LEAVITT,
MEGHAN JONES, CATHERINE
MACINNIS, and JOHN/JANE DOE NOS.1-2,

                          Defendants.

1:23-cv-10293-MKV

**OPINION AND ORDER
DENYING IN PART AND
GRANTING IN PART
DEFENDANTS' MOTION
TO DISMISS**

MARY KAY VYSKOCIL, United States District Judge:

        Plaintiff Kaitlin Lally brought this action against Defendants Klick USA, Inc. ("Klick"),

Ari Schaefer, Alexander Leavitt, Meghan Jones, Catherine MacInnis, and two John/Jane Doe

Defendants (collectively, "Defendants") asserting claims for: (1) discrimination, retaliation, and

failure to accommodate in violation of the Americans with Disabilities Act ("ADA") against

Defendant Klick, (2) discrimination, retaliation, failure to accommodate, and aiding and abetting

in violation of the New York State Human Rights Law ("NYSHRL") against all Defendants, (3)

discrimination, retaliation, failure to accommodate, and aiding and abetting in violation of the New

York City Human Rights Law ("NYCHRL") against all Defendants, (4) interference,

discrimination, retaliation in violation of the Family and Medical Leave Act ("FMLA") against

Defendant Klick, (5) violation of New York Labor Law ("NYLL") Section 215 against Defendant

Klick, (6) intentional and negligent infliction of emotional distress against all Defendants, and (7)

defamation against Defendant Klick and two John/Jane Doe Defendants.   (First Amended

Complaint ("FAC."), [ECF No. 25]).

Now before the Court is a motion on behalf of Defendants Klick, Shaefer, Leavitt, Jones, and MacInnis to dismiss only Plaintiff's intentional and negligent infliction of emotional distress and defamation claims (Counts Six and Seven). [ECF No. 33]. In support of their motion to dismiss, Defendants submitted a memorandum of law, ("Defs. Mem.," [ECF No. 35]) and a declaration of Defendant MacInnis and two exhibits. ("MacInnis Decl.," [ECF No. 34]). Plaintiff opposed. ("Pl. Opp.," [ECF No. 36]). Defendants replied. ("Defs. Reply," [ECF No. 38]). For the reasons discussed below, Defendants' motion is DENIED in part and GRANTED in part.

## BACKGROUND[1]

### I.    Factual Background

Ms. Lally was a former employee at Klick. FAC ¶ 1. Ms. Lally suffers from panhypopituitarism, a disability affecting her endocrine system which prevents her brain from producing essential hormones. FAC ¶¶ 2, 25. Her disease allegedly is exacerbated by extreme stress and without medical intervention can lead to adrenal crisis, seizures, shock, coma, and even death. FAC ¶¶ 2, 26–27.

Defendant Klick is a global service provider of business consulting and marketing services for the commercialization of healthcare and life sciences. FAC ¶ 18. Defendant Schaefer was a co-president of Klick. FAC ¶ 19. Defendant Leavitt is a Group Account Director at Klick. FAC ¶ 20. Defendant Jones is a Senior Vice President, Group Account Director at Klick. FAC ¶ 21. Defendant MacInnis is the General Counsel at Klick. FAC ¶ 22. Defendants John/Jane Doe Nos. 1–2 allegedly are two senior Klick officials. FAC ¶ 23.

Ms. Lally interviewed for a Senior Account Director position at Klick and, during this job interview, she allegedly fully disclosed the details of her disability and explained that she

---

[1] The facts are taken from the FAC and are accepted as true for purposes of this motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

occasionally required leave time to manage her disability.  FAC ¶¶ 34–35.  After accepting this position and joining Klick, Ms. Lally allegedly discussed her disability, vulnerability to stress, and her need for accommodations with Klick personnel, including Defendants Schaefer and Leavitt. FAC ¶¶ 39, 42, 48.

On December 8, 2022, Ms. Lally informed Defendant Leavitt by Slack message that she would require Friday, December 9, 2022 and Monday, December 12, 2022 as "mental health day[s]" to attend to her disability.  FAC ¶ 49.  Defendant Leavitt allegedly approved the request. FAC ¶ 50.  Then on Monday December 12, 2022, Ms. Lally informed Defendant Leavitt by email that she would need to take an additional leave day, on December 13, 2022, to tend to her disability. FAC ¶¶ 51–52.  Again, Defendant Leavitt allegedly approved the request.  FAC ¶ 52.

Defendant Jones placed a meeting on Ms. Lally's calendar for one of the days she had informed Defendant Leavitt that she would need off to tend to her disability.  FAC ¶ 53.  Ms. Lally allegedly emailed Defendant Jones to inform her that she was home on a leave day tending to her disability-related illness.  FAC ¶¶ 53, 113.  Defendant Jones allegedly never responded.  FAC ¶ 53. Then on December 13, 2022, Defendant Jones terminated Ms. Lally on a Zoom call.  FAC ¶ 54. Ms. Lally alleges that Defendant Jones scheduled this Zoom call and terminated her employment knowing about Ms. Lally's disability, including that extreme stress could cause her to suffer adrenal crisis, and that she was out that day to tend to her disability.  FAC ¶ 54.  Plaintiff alleges that Defendants Schaefer, Leavitt, and Jones all actively participated in the decision to terminate Ms. Lally while she was on a mental health day, notwithstanding their knowledge of her particular susceptibility to emotional distress.  FAC ¶ 114.  Ms. Lally alleges that on the Zoom call she became "severely emotionally distressed."  FAC ¶ 55.

The next day, Ms. Lally received an email, with an attached letter from Defendant MacInnis that allegedly was "intended to bully and intimidate her into silence" and instructed Plaintiff not to disparage Klick. FAC ¶¶ 60, 115. Plaintiff alleges that Defendant MacInnis knew, or should have known, that due to Ms. Lally's disability she might experience severe consequences, including adrenal crisis, because of Defendant MacInnis' decision to send this letter. FAC ¶ 60.

Plaintiff alleges that the following day, John Hastings, Vice President and Group Creative Director at Klick, told Gah-Jon Won, a Senior Copywriter at Klick, that Ms. Lally was on a Performance Improvement Plan and that she was terminated when she did not improve. FAC ¶¶ 61–62. Ms. Lally alleges that this is false and she was not on a Performance Improvement Plan when she was terminated by Klick. FAC ¶ 61. Further, Ms. Lally alleges that Mr. Hastings had been told this false information by one or more senior Klick officials before he repeated it to Mr. Won. FAC ¶ 61. Ms. Lally alleges that this false statement injured her professional reputation and caused her mental anguish, emotional distress, and humiliation. FAC ¶¶ 62, 64, 120.

Ms. Lally alleges that the "outrageous way" that her termination was conducted, Defendant MacInnis' reckless conduct afterward, and Klick's defamatory statements caused her to experience serious symptoms of adrenal crisis and required her to take additional medications to address these symptoms. FAC ¶¶ 64, 66. Ms. Lally alleges that she has experienced numerous other indicia of extreme emotional distress including, depression, anxiety, and a documented physical manifestation as a direct result from Defendants' conduct. FAC ¶ 67.

## II.    Procedural Background

Ms. Lally filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). FAC ¶ 14. The EEOC issued a notice of her right to sue under the ADA, FAC ¶ 14, and thereafter Plaintiff initiated this action. [ECF No. 1].

## <u>LEGAL STANDARDS</u>

To survive a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6), a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). More specifically, a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* The Court must " 'accept[ ] all of the complaint's factual allegations as true and draw[ ] all reasonable inferences in the plaintiff's favor.' " *Siegel v. HSBC North America Holdings, Inc.*, 933 F.3d 217, 222 (2d Cir. 2019) (quoting *Giunta v. Dingman*, 893 F.3d 73, 78–79 (2d Cir. 2018)). In considering a Rule 12(b)(6) motion, the Court "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *Coyle v. Coyle*, 153 F. App'x 10, 11 (2d Cir. 2005) (quoting *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 54 (2d Cir. 1999)).

## <u>DISCUSSION</u>

## I.    Documents Properly Considered On This Motion

As a threshold matter, there is a dispute among the parties over which documents the Court may properly consider at this stage. As previously noted, "[i]n considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by

reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010); *see also Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006) (on a motion to dismiss courts can also consider a document that the complaint "relies heavily on its terms and effect" which renders it "integral to the complaint"). "A district court therefore 'errs when it consider[s] affidavits and exhibits submitted by defendants, or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss.' " *See United States ex rel. Foreman v. AECOM*, 19 F.4th 85 (2d Cir. 2021) (quoting *Friedl v. City of New York*, 210 F.3d 79, 8344) (2d Cir. 2000) (alterations in original).

Defendants have submitted with their motion to dismiss a Declaration of Defendant MacInnis asserting facts and attaching (1) a copy of the December 14, 2022 letter sent from Defendant MacInnis to Ms. Lally and (2) a copy of Ms. Lally's response to the December 14, 2022 letter. *See* MacInnis Decl., Exs. 1–2. Plaintiff argues that the Court cannot consider the facts alleged by Defendants or Ms. Lally's response to Defendant MacInnis' December 14, 2022 letter (second exhibit), but concedes that the Court may consider the December 14, 2022 letter Defendant MacInnis sent to Ms. Lally (first exhibit), because it was incorporated by reference in the First Amended Complaint. Pl. Opp. at 9, 13. Defendants argue that the Court can consider the facts alleged in the MacInnis Declaration, and the documents attached, because the Court can *sua sponte* convert Defendants' motion to dismiss into a partial motion for summary judgment. Defs. Reply at 2.

It is true that Rule 12(d) of the Federal Rules of Civil Procedure provides that if, on a Rule 12(b)(6) motion, the defendants present "matters outside the pleadings" and the court proceeds to consider those matters, the defendants' "motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, that decision is discretionary. *See Mitchell v.*

*Drew*, 154 F. App'x 235, 237 (2d Cir. 2005) (summary order) (a district court's refusal to convert a motion to dismiss into a motion for summary judgment is "substantially discretionary"); *see also Shafir v. Continuum Health Partners, Inc.*, 57 F. Supp. 3d 325, 327 (S.D.N.Y. 2014) (citing *Sellers v. M.C. Floor Crafters, Inc.,* 842 F.2d 639, 642 (2d Cir. 1988) ("It is left to my discretion whether or not to consider 'matters outside the pleadings.' "); *see also Kouakou* v. *Fideliscare N.Y.*, 920 F. Supp. 2d 391, 396 (S.D.N.Y. 2012) (observing that a district court has "complete discretion" in determining whether to convert a motion to dismiss into a motion for summary judgment).  The Court declines to do so here.

When a district court decides to convert a motion to dismiss into one for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."  Fed. R. Civ. P. 12(d).  "Ordinarily, this means that a district court 'must give notice to the parties *before* converting a motion to dismiss pursuant to Rule 12(b)(6) into one for summary judgment and considering matters outside the pleading.' "  *Sahu v. Union Carbide Corp.*, 548 F.3d 59, 67 (2d Cir. 2008) (quoting *Gurary v. Winehouse,* 190 F.3d 37, 43 (2d Cir. 1999) (emphasis in original).  Here, the Court is not satisfied that there was reasonable notice to Plaintiff and the opportunity to present materials to justify converting this motion to dismiss into a motion for summary judgment.  *See Sahu*, 548 F.3d at 67–68 (holding that while a defendant's submission including facts and evidence outside of the complaint may have given "plaintiffs notice that the defendants wanted the motion changed . . . plaintiffs could not have known whether the court would in fact consider them, or would convert the motion into one for summary judgment in order to do so"); *see also Isayeva v. Diamond Braces*, No. 22-CV-4575, 2024 WL 1053349, at *12 (S.D.N.Y. Mar. 11, 2024) (denying defendants request to convert their motion to dismiss to one for summary judgment because "[a]t best, Defendants made passing reference to their desire that

the Court consider materials outside the pleadings in ruling on their motion to dismiss, but never formally expressed their intention to move for summary judgment" and thus proper notice was not provided to the plaintiffs by the Court).

Therefore, the Court will not consider the factual allegations in Defendants' declaration, or the second exhibit submitted by Defendants which was not incorporated by reference or integral to the First Amended Complaint.[2]  The Court may consider the letter sent by Defendant MacInnis to Ms. Lally (first exhibit), because, as Plaintiff conceded, it was incorporated by reference in the First Amended Complaint.

## II.    The First Amended Complaint Fails to Allege Facts to Support a Claim of Intentional or Negligent Infliction of Emotional Distress

The First Amended Complaint alleges that "despite knowing the nature of Ms. Lally's disability and her peculiar sensitivity to extreme stress" Defendants terminated her employment while she was home on "an approved 'mental health day' tending to her disability."  FAC ¶¶ 4, 112.  Specifically, Plaintiff alleges that she informed Defendant Leavitt that she would need a few days off to tend to her disability, which he approved.  FAC ¶¶ 49–52.  Plaintiff alleges that subsequent to receiving approval, Defendant Jones placed a meeting on her calendar for one of the days she was going to be out.  FAC ¶ 53.  Plaintiff alleges that she emailed Defendant Jones informing her that she was on out tending to her disability-related illness, but Defendant Jones allegedly never responded.  FAC ¶¶ 53, 113.  At that meeting, Defendant Jones terminated Ms. Lally. FAC ¶ 54.  Plaintiff alleges that amounted to extreme and outrageous conduct and that the

---

[2] The Court notes that considering the initial email, which Plaintiff concedes was incorporated by reference in the First Amended Complaint, and not considering the response to the email raises questions of completeness. *See* Fed. R. Evid. 106 ("[w]hen a writing or recorded statement or part thereof is introduced by a party, an adverse party may require the introduction at that time of any other part or any other writing or recorded statement which ought in fairness to be considered contemporaneously with it"). In any event, the Court need not even consider these documents to resolve the motion.

conduct continued when Defendant MacInnis sent a letter "intended to bully and intimidate her into silence" and Defendant Klick shared false information about her termination. FAC ¶¶ 60–61, 115. Plaintiff alleges that Defendants' conduct caused her severe emotional distress and physical damages including "several serious episodes of adrenal crisis" requiring medical intervention and hospitalization. FAC ¶ 118.

### A. *Plaintiff Fails to Plead Extreme and Outrageous Conduct to Support a Claim of Intentional Infliction of Emotional Distress*

To plead a claim for intentional infliction of emotional distress under New York law, a plaintiff must allege "(1) extreme and outrageous conduct; (2) intent to cause, or reckless disregard of a substantial probability of causing, severe emotional distress; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress." *Conboy v. AT & T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001) (quoting *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999)); *accord Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 122, 612 N.E.2d 699, 702, 596 N.Y.S.2d 350, 354 (1993).

Intentional infliction of emotional distress is a "highly disfavored [tort] under New York law," *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014), and therefore, the requirements, especially that of extreme and outrageous conduct, "are rigorous and difficult to satisfy." *Howell*, 612 N.E.2d at 702; *see also Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (internal quotation omitted) ("the standard of outrageous conduct is strict, rigorous and difficult to satisfy"). The bar is so high that the "cause of action is almost never successful" and claims are "routinely dismissed on pre-answer motion." *Guan N. v. NYC Dep't of Educ.*, No. 11-CV-4299, 2013 WL 67604, at *25 (S.D.N.Y. Jan. 7, 2013).

"Whether the conduct alleged may reasonably be regarded as so extreme and outrageous as to permit recovery is a matter for the court to determine in the first instance." *Zanfardino v. City of New York*, 230 F. Supp. 3d 325, 335 (S.D.N.Y. 2017) (quoting *Stuto*, 164 F.3d at 827).

"Liability has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Chanko v. American Broadcasting Cos.*, 27 N.Y.3d 46, 56, 49 N.E.3d 1171, 1179, 29 N.Y.S.3d 879 (2016) (quoting *Howell*, 612 N.E.2d at 702); *see also Coggins v. County of Nassau*, 254 F. Supp. 3d 500, 523 (E.D.N.Y. 2017).  However, "knowledge of a plaintiff's susceptibility to emotional distress can, under New York law, transform non-actionable acts into outrageous conduct." *Rich*, 939 F.3d at 123.

As an initial matter the Court acknowledges that "New York [c]ourts are reluctant to allow intentional infliction of emotional distress claims in employment discrimination cases" and "wary of allowing plaintiffs to recharacterize claims for wrongful or abusive discharge . . . as claims for intentional infliction of emotional distress." *Stevens v. New York*, 691 F. Supp. 2d 392, 399 (S.D.N.Y. 2009) (collecting cases); *see also Chidume v. Greenburgh-North Castle Union Free Sch. Dist.*, No. 18-cv-01790, 2020 WL 2131771, at \*15 (S.D.N.Y. May 4, 2020) ("New York courts are particularly reluctant to find that such conduct is sufficiently extreme or outrageous" when intentional infliction of emotion distress claims are based "on discrimination, harassment, or retaliation in the employment context").  However, New York courts have also held that "[i]n the course of discharging the employee, [] an employer's deliberate reprehensible conduct intentionally or recklessly causing severe emotional distress . . . may support a claim for intentional infliction of emotional distress." *Howell*, 612 N.E.2d at 705.  Therefore, the Court will not summarily dismiss Plaintiff's intentional infliction of emotional distress claim simply because it is raised in the employment context.

Nevertheless, Plaintiff's intentional infliction of emotional distress claim fails because the First Amended Complaint does not allege facts amounting to extreme and outrageous conduct.

Terminating Plaintiff while she was out on a mental health day and subsequently sending her a post-termination letter may demonstrate a level of "callousness and insensitivity to human foibles," *Moleon v. Alston*, No. 21-CV-1398, 2021 WL 5772439, at *13 (S.D.N.Y. Dec. 3, 2021), but it does amount to extreme and outrageous conduct to support a claim of intentional infliction of emotional distress. These allegations do not meet the "rigorous" standard of conduct required for an intentional infliction of emotional distress claim that goes "beyond all possible bounds of decency." *Howell*, 612 N.E.2d at 702.

Additionally, Plaintiff's argument that the alleged post-termination slander by Defendants amounts to extreme and outrageous conduct fails. New York's courts have routinely "rejected claims of intentional infliction of emotional distress 'where the conduct complained of falls well within the ambit of other traditional tort liability.' " *Levin v. McPhee,* 917 F. Supp. 230, 242 (S.D.N.Y. 1996), *aff'd,* 119 F.3d 189 (2d Cir. 1997) (quoting *Fischer v. Maloney,* 43 N.Y.2d 553, 558 402 N.Y.S.2d 991, 993, 373 N.E.2d 1215, 1217 (1978)). To the extent that Plaintiff's claim for intentional infliction of emotional distress is based on the allegations that Defendant Klick told employees that she was on a Performance Improvement Plan when she was terminated that is duplicative of her defamation claim. New York courts have repeatedly held that allegations like that are "more properly addressed within the context of a [defamation] suit." *Id.*

Finally, Plaintiff attempts to save her intentional infliction of emotional distress claim by arguing that in light of Defendants' knowledge of her peculiar susceptibility to stress and the fact that they decided to fire her when she out on a mental health day could amount to extreme and outrageous conduct. However, the courts that have found that a defendant's knowledge of a plaintiff's particular susceptibility converts potentially non-actionable conduct into actionable conduct have done so in the context of much more substantial and egregious conduct than what

has been alleged here.  *See, e.g.*, *Rich*, 939 F.3d at 122–24 (finding defendants proceeding with a six-month long "deliberate and malicious campaign" of "emotional torture" with knowledge of the plaintiff's susceptibility to emotional distress could amount to extreme and outrageous conduct); *see also Moraes v. White*, 571 F. Supp. 3d 77 (S.D.N.Y. 2021) (defendants' "multi-pronged campaign to harass" involving threatening to have her arrested, sending agents to her apartment to threaten her with deportation, sending baseless cease-and-desist letters threatening to file complaints against her with the district attorney and the police, and creating evocative posts on Facebook with the goal of destroying her future job prospects in the community, in combination with defendants' knowledge of her "emotionally vulnerable state" could amount to extreme and outrageous conduct).  The facts alleged here are easily distinguishable from those alleged in *Rich* and *Moraes*.  There are no allegations here that even come close to a "multi-pronged" or "deliberate and malicious campaign" done with knowledge of Plaintiff's particular sensitivities sufficient to find extreme and outrageous conduct.  *See McGrath v. White*, 82 Misc. 3d 1236(A), at *14, 208 N.Y.S.3d 805 (N.Y. Sup. Ct. 2023) ("even if it can be said that [defendant] knew of [plaintiff's] susceptibility, the actions attributed to him by [defendant] do not state a claim under this tort" and reasoning that the cases which have employed that rule "have only found defendant's conduct to be actionable when it meets a much higher standard" involving facts amounting to a "deliberate and malicious campaign").

Accordingly, Plaintiff's intentional infliction of emotional distress claim must be dismissed for failure to allege facts constituting extreme and outrageous conduct.

B.  *Plaintiff Fails to Plead a Claim of Negligent Infliction of*
    *Emotional Distress*

"To plead a negligent infliction of emotional distress claim under New York law, a plaintiff must allege (1) a breach of a duty owed to the plaintiff; (2) emotional harm; (3) a direct causal

connection between the breach and the emotional harm; and (4) circumstances providing some guarantee of genuineness of the harm." *Francis v. Kings Park Manor, Inc.*, 992 F.3d 67, 81 (2d Cir. 2021); *see also Lea v. McNulty*, 227 A.D.3d 971, 973, 212 N.Y.S.3d 152, 156 (2d Dep't 2024) ("A cause of action to recover damages for negligent infliction of emotional distress generally must be premised upon the breach of a duty owed to [the] plaintiff which either unreasonably endangers the plaintiff's physical safety, or causes the plaintiff to fear for his or her own safety") (internal citations omitted).

The First Amended Complaint falters on the first element. Plaintiff does not allege a duty owed to her by Defendants or any breach of that duty. *See Corley v. Vance*, 365 F. Supp. 3d 407, 454 (S.D.N.Y. 2019), *aff'd sub nom. Corley v. Wittner*, 811 F. App'x 62 (2d Cir. 2020) (plaintiff failed to "allege any special duty owed to him by any of the defendants, as required under New York law."); *see also Mortise* v. *United States*, 102 F.3d 693, 696 (2d Cir. 1996) ("The duty in such cases must be specific to the plaintiff, and not some amorphous, free-floating duty to society."). In an attempt to support the viability of Plaintiff's negligent infliction of emotional distress claim, she asserts that Defendants "make no effective argument challenging her claim for NIED, which does not require extreme and outrageous conduct." Pl. Opp. at 14. And while Plaintiff is correct that extreme and outrageous conduct is not an element of a negligent infliction of emotional distress claim, "any claim sounding in negligence under New York law must be based in the breach of a legally cognizable duty of care." *Abdulaziz v. McKinsey & Co., Inc.*, No. 21-CV-2921, 2022 WL 2444925, at *2 (2d Cir. July 5, 2022) (summary order) (affirming dismissal of negligent infliction of emotional distress claim because plaintiff failed to plead a duty owed by defendant); *see Sacino v. Warwick Valley Cent. Sch. Dist.*, 138 A.D.3d 717, 719, 29 N.Y.S.3d 57, 60 (2d Dep't 2016) ("A cause of action to recover damages for negligent infliction of emotional

distress generally requires a plaintiff to show a breach of a duty owed to him which unreasonably endangered his physical safety, or caused him to fear for his own safety.") (citations omitted).  The First Amended Complaint fails to allege that Defendants breached a duty of care that is cognizable under New York law to support a claim of negligent infliction of emotional distress.

Furthermore, Plaintiff pleads her negligent infliction of emotional distress claim as an alternative to her intentional infliction of emotional distress claim.  *See* FAC ¶¶ 114, 116 ("Defendants engaged in extreme and outrageous conduct which ***intentionally and/or negligently caused***, or disregarded a substantial probability of causing, severe emotional distress to Ms. Lally.") (emphasis added).   While Plaintiff is permitted to plead causes of action in the alternative, *see* Fed. R. Civ. P. 8(d)(2), "New York Courts have rejected uniformly such attempts to transmogrify intentional torts into negligence."  *Wahlstrom* v. *Metro-N. Commuter R. Co.*, 89 F.Supp.2d 506, 532 (S.D.N.Y. 2000) (internal citations and quotations omitted).  Here Plaintiff only alleges intentional conduct and then abruptly includes "or negligently" in an attempt to transform its intentional tort allegations into negligence.  FAC ¶ 118 ("Defendants' extreme and outrageous conduct was knowing, malicious, willful, wanton").  As such, Plaintiff's negligent infliction of emotional distress claim (Count Six) must be dismissed.  *See Chai v. New York Univ.*, No. 1:23-CV-09192-MKV, 2024 WL 4042468, at *11–12 (S.D.N.Y. Sept. 4, 2024); *see also Dineen ex rel. Dineen v. Stramka*, 228 F.Supp.2d 447, 454 (S.D.N.Y. 2002) ("Since plaintiff's claims against defendant are premised on intentional conduct, [the] claim for negligence must be dismissed.").   Accordingly, Plaintiff's claim against Defendants for negligent infliction of emotional distress is dismissed.

**III.    The First Amended Complaint Alleges Sufficient
Facts to Support a Claim for Defamation.**

Defamation is the "making of a false statement which tends to expose the plaintiff to public

contempt, ridicule, aversion or disgrace, or induce an evil opinion of him in the minds of right-

thinking persons, and to deprive him of their friendly intercourse in society." *Foster v. Churchill*,

87 N.Y.2d 744, 751, 665 N.E.2d 153, 157, 642 N.Y.S.2d 583, 587 (1996) (citations and quotations

omitted).  Under New York law, to state a claim for defamation, a plaintiff must allege (1) a written

or spoken defamatory statement of and concerning the plaintiff, (2) publication to a third party, (3)

fault, (4) falsity of the defamatory statement, and (5) special damages or per se actionability.  *See*

*Davis v. Boeheim*, 24 N.Y.3d 262, 268–69, 22 N.E.3d 999, 1003–04, 998 N.Y.S.2d 131, 135–36

(2014); *see also Palin v. N. Y. Times Co.*, 940 F.3d 804, 809 (2d Cir. 2019).

The First Amended Complaint alleges that Mr. Hastings, a Klick Vice President, told Mr.

Won, another Klick employee, that Plaintiff was on a Performance Improvement Plan at the time

she was terminated and she had not improved.  FAC ¶ 61.  Plaintiff also alleges that the statement

that she was on a Performance Improvement Plan at the time of her termination and she did not

improve was false.[3]  FAC ¶ 61.  These facts sufficiently allege a false statement of fact published

to a third party that was about Plaintiff.  Finally, because the false statement alleged plausibly

tends to injure Plaintiff's profession or professional reputation it is considered defamation *per se*

and she need not allege special damages.  *See Liberman v. Gelstein*, 80 N.Y.2d 429, 435, 605

N.E.2d 344, 344, 590 N.Y.S.2d 857, 860 (1992) (explaining one of the categories of slander *per*

*se* is a statement "that tend[s] to injure another in his or her trade, business or profession"); *see*

---

[3] Defendants concede in their memorandum of law that Plaintiff was not on a Performance Improvement Plan when she was terminated.  *See* Defs. Mem. at 7.

*also Biro v. Conde Nast*, 883 F. Supp. 2d 441, 456 (S.D.N.Y. 2012) (citation omitted) (statements that "tend[] to injure another in his or her trade, business or profession [are] defamatory *per se*");

Defendants argue that Plaintiff's defamation claim is defective and must be dismissed because it relies on conclusory statements and does not identify the alleged speaker of the statements. Defs. Mem. at 6–8. Plaintiff argues that the First Amended Complaint satisfies the pleading requirements since it identifies "the speaker, recipient and time of the statement." Pl. Opp. at 16.

In federal court, a plaintiff asserting a defamation claim "must 'identify (1) the allegedly defamatory statements; (2) the person who made the statements; (3) the time when the statements were made; and (4) the third parties to whom the statements were published.' " *Nouinou v. Smith*, No. 20-CV-8682, 2021 WL 4340952, at *5 (S.D.N.Y. Sept. 22, 2021) (New York's higher pleading standards are procedural rules and thus "do not apply to federal courts sitting in diversity" and instead federal courts "apply the pleading standards set forth in Rule 8."). Here, the First Amended Complaint alleges facts identifying the particular words complained of (that Ms. Lally was on a Performance Improvement Plan at the time of her termination and did not improve), the person who made the statements (Mr. Hastings), the approximate time they were made (a few days after Plaintiff was terminated on a Zoom meeting), and the third party to whom the statements were published (Mr. Won). FAC ¶ 61. These facts are sufficient for Plaintiff's defamation claim to survive a motion to dismiss. *See Ghost in the Mach. Inc. v. Planned Parenthood Fed'n of America, Inc.*, No. 22-CV-9270, 2025 WL 252913, at *10 (S.D.N.Y. Jan. 21, 2025) (allegations that "identify to whom, when, and where" the allegedly false statement was "made are specific enough to survive a motion to dismiss").

16

The Court acknowledges that there are also more conclusory and non-specific allegations in the First Amended Complaint claiming that Defendant Klick and Defendants Jane/John Doe No. 1–2, broadcasted defamatory statements to former colleagues, FAC ¶¶ 61, 120–125, which alone would be insufficient to support a defamation claim. *See Rodgers-King v. Candy Digital Inc.*, No. 23-CV-2591, 2024 WL 382092, at *7 (S.D.N.Y. Feb. 1, 2024) (dismissing defamation claim because complaint failed to allege who at the defendant company "made the alleged statements"); *Neal v. Asta Funding, Inc.*, No. 13-CV-2176, 2014 WL 3887760, at *3 (S.D.N.Y. June 17, 2014) ("plaintiff's failure to identify the anonymous employee or agent of ASTA responsible for making the statement is fatal to his claim"). However, the additional facts discussed above, including that Mr. Hastings shared this allegedly false statement with Mr. Won on a Zoom meeting a few days after Plaintiff's termination, are "specific enough to afford [the] defendant sufficient notice of the communications complained of to enable [it] to defend [itself]." *Biro*, 883 F. Supp. 2d at 456 (cleaned up).

Defendants next argue that even if Plaintiff's defamation claim is plead with sufficient particularly, it must nonetheless be dismissed because statements made between Mr. Hastings and Mr. Won are protected by a qualified privilege. Defs. Mem. at 7. Plaintiff argues that there is nothing on the face of the First Amended Complaint suggesting the basis for the qualified privilege and therefore qualified privilege is an inappropriate basis for dismissal at this stage. Pl. Opp. at 18.

Defendants are correct that New York law grants a qualified "common interest" privilege to "defamatory communications made by one person to another upon a subject in which both have an interest." *Meloff v. N.Y. Life Ins. Co.*, 240 F.3d 138, 146 (2d Cir. 2001). However, the Second Circuit has cautioned district courts against the use of a qualified privilege in deciding a motion to dismiss, and therefore the Court declines to do so here. *See Conti v. Doe,* No. 17-CV-9268, 2019

WL 952281, at *9 (S.D.N.Y. Feb. 27, 2019) ("the Second Circuit has cautioned district courts against dismissing defamation claims based on the common interest privilege when deciding a Rule 12(b)(6) motion, holding that a privilege is better considered on a motion for summary judgement.") (citing *Boyd v. Nationwide Mut. Ins. Co.*, 208 F.3d 406, 410–11 (2d Cir. 2000)); *see also Unlimited Cellular, Inc. v. Red Points Sols. SL*, 677 F. Supp. 3d 186, 198–99 (S.D.N.Y. 2023) (declining to dismiss based on a qualified privilege at the motion to dismiss stage "[b]ecause the Second Circuit Court of Appeals cautions against the use of a qualified privilege in deciding a motion to dismiss, and New York courts are split").  Therefore, the qualified privilege defense raised by Defendants in their opposition does not, at this stage, warrant dismissal of Plaintiff's defamation claim.

## IV.    Leave to Amend

Under Federal Rule of Civil Procedure 15, "[t]he court should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."  *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (citing *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)).  However, here, Plaintiff was on notice of the potential deficiencies in her First Amended Complaint by way of Defendants' pre-motion letter, [ECF No. 27], the Court provided Plaintiff with an opportunity to amend the First Amended Complaint to address those potential deficiencies, [ECF No. 30], and Plaintiff waived the opportunity to amend [ECF No. 31], and therefore the Court finds that leave to amend here would be futile.  *Chunn v. Amtrak*, 916 F.3d 204, 208 (2d Cir. 2019) (citing *Tocker v. Philip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006)).

## **CONCLUSION**

For the reasons stated above, Defendants' motion to dismiss is GRANTED with respect to Plaintiff's intentional and negligent infliction of emotional distress claims (Count Six) and DENIED with respect to Plaintiff's defamation claim (Count Seven).  Plaintiff's claims for intentional and negligent infliction of emotional distress (Count Six) are dismissed with prejudice. The Clerk of Court is respectfully requested to terminate the motion pending at docket entry 33.

**SO ORDERED.**

**Date:  March 11, 2025**                                    **MARY KAY VYSKOCIL**
**New York, NY**                                              **United States District Judge**